The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw a nine and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Ms. Boyd? Ready for me? Absolutely. Good morning, Your Honor. It's Renee Bowen on behalf of United States Dedicated Transport. Good morning. I'm going to assume that you all are familiar with the facts, unless you tell me otherwise, because we've got a lot to get through. So I wanted to get straight to the arguments here. So this is an appeal from the administrative agency, the Department of Labor's Administrative         It's a misdemeanor. It's a misdemeanor. It's a misdemeanor. It's a misdemeanor. And it's called a confirmation effort for a misdemeanor. And it's called a confirmation effort for a misdemeanor, and this is because there is an alleged wrongful discharge under the Surface Transportation Assistance Act, the STAA. And there are three primary issues that I want to discuss today. There are some sub issues under those categories. But the primary issues are, there was a valid and enforceable settlement agreement between the parties that the ALJ and the ARB refused to address. The second issue is that there were significant and prejudicial delays in the administrative proceedings that caused great, wide, severe prejudice in putting on their case. And the third issue is that the ALJ's findings and the ARB's adoption of those findings were not supported by substantial evidence in the record. So I'll address each of those in turn. The first issue I want to discuss is the settlement agreement, because that is a threshold issue. This case should never have been submitted to an evidentiary hearing in the first place. The parties reached a binding and enforceable settlement agreement that was extensively negotiated. And as part of the joint appendix, we have the motion to enforce the settlement agreement that was filed, and that's at page 148 of the joint appendix. And the ALJ refused to hear any evidence on the issue. He wouldn't let us bring it up. He refused to discuss it. Because he said he didn't have jurisdiction to enforce the settlement agreement. And did you challenge that conclusion in front of the ARB? We did not. Well, then how is it in front of us? I'm sorry? And why is it in front of us? So it was an issue that was, so under 29 CFR 1978.110A, the regulation does not automatically deem something that's not raised in a petition to the ARB as waived. It says it may be waived, but it doesn't require it to be waived. In this instance, it's not waived because it formed a part of the ARB's decision and order. They specifically, in their decision, referenced Great White Settlement Petition, and specifically found that there was substantial evidence in the record that the parties did not enter into a settlement agreement. So that formed a portion- But the enforceability, you're raising a legal question, right, about whether the ALJ has the authority, jurisdiction to enforce a settlement agreement, and that question was never presented to the board or ruled on by the board, and I just am struggling to figure out how we would address it in the first instance. Sure. So it was the legal question as to whether or not there was enforceability is part of the issue as to whether or not there was substantial evidence to support it, because that was what the ARB ruled. They ruled there was not substantial evidence, and that is because when we tried to bring it up at the hearing, the ALJ said, I believe his exact words were full stop on that one. He would not let us put any evidence in with respect to the settlement agreement. So the ARB took the record and said that there was not substantial evidence to support that there was a settlement agreement, and that's because there was nothing in the record because we weren't allowed to present evidence on that issue, and the ALJ erred in not permitting us to address the issue, stayed on the basis that he doesn't have authority to enforce a settlement agreement, but that's incorrect. So if you look at the motion to enforce settlement agreement, what we requested was a dismissal of the complaint because of the settlement, and the ALJ, there's an ARB case, an Administrative Review Board case that is directly on point. It's Tankersley, the Triple Crown Services, and the Office of the Administrative Law Judge's case number is 92-STA8, and in that case, there was an oral settlement agreement reached by the parties. The complainant subsequently refused to sign the written agreement, and on motion to enforce or approve the settlement, the oral settlement agreement, in that case, the ALJ was permitted and had the authority to receive evidence to determine whether a settlement agreement existed, and if it did, to approve the settlement and dismiss the case. That's all we were asking for, whether it was titled, it was titled a motion to enforce. The relief that was sought was dismissal of the case based on the settlement. So the ALJ erred in refusing to allow that evidence in the evidentiary hearing and refusing to address that motion, that preliminary motion. So on that basis, that's just an incorrect legal conclusion that they didn't have the authority to do that, and I believe it was preserved because the ARB addressed it as a basis of their decision. So the second issue I'm just going to address briefly is... We're past the hurdle of whether or not it's appropriately preserved for our review that you have a contract. You know, there are old expressions, the devil is in the detail. Do you have the detail assigned on by both parties? I'm sorry, the... The detail. There are other things, you know, a lot of people look at the gross state amount, perhaps, for example. But there are other details. Weren't they added later? So no. So that is... There were two provisions that Mr. Hwang complained about that were seen as additional material terms in that settlement agreement. They were not additional material terms. Those two terms were confidentiality and a release... That's not material? So it's not because the ARB routinely, routinely severs confidentiality provisions from these types of agreements. They said... And I agreed with Mr. Stady that that should be taken out of the agreement because it has no practical effect, and it wasn't actually agreed to. I agreed to that. So that would have been taken out by the ARB because the ARB, the Department of Labor, requires these settlement agreements to be in writing, and it becomes part of the Public Record and Subject to Freedom of Information Act request. And so they routinely found, and there's a couple of cases where they discussed this, that when settlement agreements are provided to them, written agreements are provided to them. It's not a confidentiality provision. They just sever them and approve the rest of the settlement. So your position is, because the provision that you added has no practical effect and he objected, that that doesn't preclude him from looking at the agreement as a whole? So that was the only provision that they contested, that and the fact that Mr. Hwang released his claims was, that was the only provision that he challenged. And I agreed with him when Mr. Stady came back to me and said, hey, there was no agreement to confidentiality. I said, you know what? You're right. I'll take that out. This was my standard employment release that I generally use that I sent over. And so I agreed. You know, that's not part of the agreement. So that doesn't change the fact that there was an agreement reached on the material terms, what the terms were that Mr. Hwang agreed to release his complaint on. So it's not material because it would have had no impact on the actual agreement that was approved by the secretary. They just would have severed it from the agreement. Let's go to the major part of it. You explained why you think the rest is boilerplate and would have been removed. He said, I think I'm ready to settle, you know, if it's available. Is that in that conditional language on both of those? I think if it's available, you think together, because it's available, that made the think an automatic expression of a contract. So he said, I think, yeah, we're going to go with the settlement if it's still available. I confirmed in writing that it was still available and the terms. So that was, but quite honestly, that's that's the way Mr. Hwang speaks. I know that's not in the record. He's very equivocal. And he does say, you know, I think we're going to go with the settlement if it's still available. So I see you. So you want us to interpret, I think is equates to I'm going to do it. That's that is what we it was extensive negotiation. I think we're going to do it.  OK, and so the rest the rest of that statement was that put in the letter to the judge, the judge requested updates on settlement that you heard that we intended to file for dismissal and he hoped we didn't have to go through that because he is now accepting the settlement. When you look at when you look at the entire voicemail as a whole, it shows that he agreed to that settlement. The ALJ was required to take evidence to determine whether or not there was a valid settlement agreement under this under the Tankersley case. He did not do that. If there was any ambiguity there, he was required to receive evidence and hear argument on that. He did not. So that is a clear error on the part of the ALJ and the ARB. How is it an error on part of the ARB if you didn't make this argument to the ARB? I don't understand in what respect did the ARB err by not considering whether or not the ALJ was wrong when the ALJ decided not to take evidence because the ALJ couldn't enforce your settlement agreement anyway? So it's a clear error on the part of the ARB because they they reviewed the Which is a different question. They didn't make a mistake in not ruling that, look, the ALJ should have taken evidence on this. The ALJ was wrong to think you couldn't enforce this agreement because you didn't tell the board that that's that that was wrong. Well, he said and if the ARB said in determining that in issuing the order that there was Which is a different question. The thing that you think the ALJ got wrong is not something that you told the board the ALJ got wrong. Never told the board the ALJ was wrong in thinking he had no power to enforce this agreement and moving on. So the question is whether or not it's supported by substantial evidence. And there was no evidence in the record because it was not permitted. And so the ARB went out of its way to find that there was no substantial evidence. So they raised that question, the ARB. And and so it was it was not waived because the ARB discussed it. And the reason that there was no substantial evidence in the record was because we were not permitted to introduce it. So had had we been permitted to introduce it, then there would have been substantial evidence in the record. And the ARB erred in that conclusion based on the underlying circumstances. So that the other issue that I want to address just just very briefly is substantial delays in the administrative proceedings. And the timeline is all laid out in our brief, and I will defer to that. However, the ALJ found that these extensive delays were not prejudicial to great wide and that and that there was because there were three great wide witnesses who were able to testify at the hearing. However, there was clear evidence in the record that all three of those great great wide witnesses, Mr. Burnett, Mr. Scott and Ms. Price, couldn't recall key details on. Can I ask you what I think is sort of a special question almost before we get to the question of prejudice? So as I understand the timeline, what you are concerned about because it goes to prejudice, it's the it's mostly really the three and a half years it took OSHA to resolve this complaint. And there's no contention that the employee here had anything to do with that delay. And so I guess I'm asking, is there any authority for the idea that we would effectively punish an employee who prevails before an agency because the agency took too long to give him relief? Like, how would that make sense? So the employee. Is there any case that's ever done that? There's no case, but the statute itself, the the statute itself or forty nine U.S.C. three eleven oh five C. If the if the agency, if the secretary does not issue that decision by day two hundred and ten after their 60 days that they're supposed to, the employee has the option of filing in district court as opposed to waiting for the agency decision. That is not an option that the employer has. So the delay is in part caused by by Mr. Huang's failure to expedite the proceedings. Now, there was a lot of argument in the briefs about and that's just an opportunity. That's not an obligation under the regulations for the employee to do that, is it? It is not an obligation. How is it his fault if he doesn't do something that is not obligated to do? I'm not saying that he, you know, that he had an obligation to do that, but he had that option and he was the only one who had that option. So it took a significant period of time. And that delay is that's not attributable to Mr. Huang. I agree. That is the secretary, the Department of Labor. But Mr. Huang did have the option to expedite these proceedings, whereas Great White did not. And that's all that I'm saying based on based on that. But there's nothing. I mean, I think this is sort of an interesting question, but I could not find any case that supported the idea that if an employee, I mean, you know, was hurt as much as anyone by this, it took him an extra seven years or something to get his back pay award that we would then turn around and take away the back pay award because the agency took too long in getting his relief. It just seems very counterintuitive. And I couldn't find any case suggesting that that would be sort of an appropriate response. If there is prejudice, then they are outlined, if there is prejudice, then they can submit a case. But that's a case where I'm guessing you're thinking of the same cases I found where the agency is bringing the claim and then it sort of makes sense to say, look, agency government, you took too long. Now you can't proceed with your claim. I couldn't find anything where it's an individual employee being penalized because an entirely different actor of the agency took too long. But maybe if you've got a case, I'll look again. The same, the same. It's based on the same. What word for the same premise is that the significant delays, prejudice, the defendant in those cases and here that nothing can highlight the prejudice more than the ALJ's decision, citing what he calls inconsistencies in some of the witness testimony. They weren't actually inconsistencies. They were the testimony built upon each other. It wasn't differing. But some of the witnesses, they remembered things in more detail than others. And that's because of the passage of time. And they're on both or all three. Burnett, Scott and Price testified that they had trouble recalling key details because of chat. Why didn't your client, once the employee filed very promptly his OSHA complaint, wasn't OSHA, I'm sorry, filed his whistleblower complaint. Why didn't the employer immediately get everyone's testimony on the record? Like you were on notice, there's going to be this complaint, so gather your people, do an investigation, figure out what happened and memorialize it so that. However, many years later, everybody will know what happened. I don't have an answer to that question. They you know, they were people don't go through life thinking that they're going to be involved in litigation. But once the complaint is filed, it's pretty clear they're going to be involved in litigation. They are. They are. There was no. They did not see any merit to the case, and so they preserved the documents that were relevant to the discharge, they preserved the meeting minutes, they preserved some of the photographs, they preserved Mr. Huang's letters, which they found germane to the issue of of his discharge. So so they did preserve those cases are relevant documents. They didn't they didn't take testimony. They also weren't expecting it to be five and a half years between the time of the filing and the evidentiary hearing because the statute says 60 days. So so that was not something that they. We're on notice that they needed to do with that, but at some. So. And in addition, Miss Price, who was the safety director and also involved in the decision to terminate, she was she left great wide about three or four months later to take a new opportunity. So she wasn't employed by great life or, you know, an extensive period of time or for a period of time after after. The complaint was filed, but she was not in their control at that point to be able to get testimony or even if. Even if, you know, they were to go and preserve testimony. When we get to the actual substantive issues, the we have significant issues with the ALJs and the ARBs decision regarding substantial that that the findings were supported by substantial evidence in the record. Wang had the burden of proving three things in his in his case, and that was engaged in protected activity. We don't dispute that he engaged in some protected activity. We do dispute the extent of what was protected, but we don't dispute that he did engage in some some protected activity. We also don't dispute that there was an adverse employment action. He was terminated. Don't dispute that. Where we have a strong dispute is the contributing factor portion of that. And the ALJ and the Administrative Review Board based their finding or found that Wang's protected activity was writing an anonymous letter alleging safety issues or safety complaints. We don't dispute that was protected. They also found that copying and removing confidential paperwork was protected activity, and they also found that recording conversations, confidential conversations was protected activity. We do dispute those two things. However, our dispute with respect to those two are outlined very in a lot of detail in our brief. For purposes of today, I don't think that it matters. So I'm going to assume we are not we are not conceding the issue at all. But even if you were to agree that the recordings and the confidential, the removal and copying of confidential paperwork was protected, it still doesn't affect the outcome. The ALJ did not find that dropping a trailer on a Manhattan street unsecured was protected activity. And because it's not that does not involve safety, a safety complaint, and they did not find that damaging. I'm sorry, just logically, I'm. I know you're way over time, but I just I'm a little bit. I didn't quite follow that, if we assume that the making of the reporting and the taking the document out of the lockbox are protected activity, didn't the employer say that's why it fired him? So in terms of the contributing factor analysis, they did not say that was why they fired him. There were four grounds for termination, each of which were independent of each other. But if if you fire. So you're saying I understand what you're saying. So it takes care of contribute. Like, obviously, they said that's why they fired him. But if they would have fired him for the trailer thing anyway, it doesn't matter. Correct. Correct. Because the key portion of that contributing factor standard is if the protected activity alone or in combination affected the termination in some way. So it takes care of. So now we're past contributing factor for purposes of this argument. We are past contributing factor. That's what confused me. I thought that's where you wanted to kind of stand your ground today. But no, we're up to the fourth factor now. Right. So and I mean, if anybody has any questions about why why we don't believe the recording, I don't. I'm happy to address those. But again, we'll defer to our brief on those. So when you consider a contributing factor because each of the grounds for termination were independent and would have effect, would have been playing, would have been terminated in the absence of any other activity or looking at all of these activities individually, that is not, by definition, a contributing factor because the outcome would have been so they did not affect the termination. In finding what then we get to the ALJ and the ARB's finding that great, why did not meet its burden to prove by clear and convincing evidence that it would have terminated when absent any protected activity. And the basis for that decision was what I touched on it earlier. The ALJ. Characterized as inconsistencies in the great wide testimony, great wide witness testimony about the reasons for the termination. And again, there was no inconsistency there. They built upon each other and recalled recalled in more detail. Some some recalled more detail than others. The letter of termination. Did not give a grounds for for termination, that's not inconsistent with anything. It was just a notification of termination. It's strange, but maybe not inconsistent. And that's that's a policy I I've seen many, many letters of termination that just say you are hereby being terminated when it was relayed to Mr. Huang by the HR representative, Ms. Harvey, Mr. Huang testified that she was informed of the reason for his termination, which was violations of public or not violations of great wide policy. And that's not inconsistent because the day before his termination, he had a lengthy meeting with great wide officials in which they discuss the the policies that he violated. And that meeting is memorialized in what was Respondents Exhibit F at the hearing, which was Mr. Jeff Lester's meeting minutes. Now, when. At the hearing, testify that. The trailer drop issue was discussed at that meeting, that removing and copying documents was discussed at that meeting, and he. The letter also or the meeting minutes also go into the damaging of the lockbox. Mr. Huang testified that he did not. He did not agree with the way that it was presented in Mr. Excuse me, you're way over time, but I'm trying to give you the time. But let's go back to this. Judge Harris, based on Judge Harris questions and your answers, we'll peel the onion down to you left with. The one that had nothing to do with whether or not it was protected is the trailer left in Manhattan when he went to New Jersey, correct? Is that the only thing left? Because the lockbox is related to removing in that has some relationship to you didn't bring a picture that right in other words, if the lockbox was a piece of resistance, Charles, you didn't have a picture of it. Some people say it was enough to get a finger in our hand and you get a grapefruit in it. I mean, so it didn't seem like that was really a big thing. But the trailer seems to be a plausibly work connected safety and property and protection. But the problem is that you didn't even have evidence that sort of nail that down as to the Nordstrom's people complain about it and that it was it was very sketchy, right? So it wasn't because Mr. Scott testified that he communicated with the Nordstrom employee who reported that this was left unsecured and Mr. Wang himself admitted that this that he left the that he left the trailer on the Manhattan Street. Now, there's a just because he couldn't get it through the tunnel. No, no. That was New Jersey. And that was the New Jersey terminal, not the Manhattan Street. Oh, so it sort of had nothing to do with his explanation. It he testified a lot about the tunnel. But what is important there is that in order to get through that tunnel, you have to drop the trailer on Nordstrom property. And the location where something is dropped is what makes it unsecure. It is the policy not to drop a trailer. Counselor, can I. I'm sorry, I go ahead, go ahead. I mean, I feel like we are the ALJ, right? Like it seems to me we are having right now a very interesting DeNovo discussion about what really happened here. But we're not like we're reviewing two layers of administrative review for substantial evidence. And is there something do you have an argument to make about that? Like, imagine that our review is not DeNovo. Imagine that we give great deference to what the agency already has heard, all of this evidence already found. Why wouldn't we say there is, you know, there must have been a very interesting evidentiary hearing. But this is how the agency came out. I mean, I've read both opinions. I can't see the thing that they got so obviously wrong that I can say, no, no, no reasonable fact finder could come out this way. Do you have an argument to make about that? There. Yes. So with respect to the substantial evidence. Wang's testimony himself, so starting with Wang's testimony, he. There was no actual evidence, his testimony was based on speculation, his beliefs, and that is throughout the record. When you get to the issue of the ALJ in deciding that there was that statewide did not meet its burden. Found that relied on the fact that it was unclear as to where the trailer was left, the trailer was dropped. And that is not that's not the issue. He completely missed the issue. The issue is where it was dropped. It doesn't matter if he went to New Jersey. It doesn't matter if he went around the corner. The issue is that it was dropped. The undisputed evidence, which is admitted to by Wang. Everybody agrees he dropped the trailer on a Manhattan street. It doesn't. And dropping the trailer means unhooking it. The testimony was unhooking it from the tractor and driving away. You're leaving a trailer, five million dollars in merchandise on a street in Manhattan unattended. That was the basis for termination. He said there was no. And the testimony was in that case, in this case, by both price and thought that he would have been terminated. For that alone. And he was terminated for that alone. There was no dispute about that. Wang acknowledged that it was a company policy. The only evidence is on this issue is that in the record is that he dropped the trailer on a Manhattan street and left it. Again, where he went is irrelevant. That is a clear violation of company policy that all of the witnesses testified is an independent grounds for termination. And he would have been terminated for that. Absent any other. Activity, so there was clear error, the ALJ ignored the actual evidence in this case on that issue and focused in on the fact that it was he determined it was unclear whether or not Mr. Wang went to New Jersey. That's irrelevant to the fact that he's admitted that he's dropped this trailer. There was also evidence that. The. He would have been terminated for this sooner because he admitted to dropping trailers or. Had great wide known about it, great wide did not know about these prior instances, so this is. The temporal proximity between all of these events and the termination, it's it's irrelevant at this point because we have this intervening factor right before his termination that he was suspended right after that incident. When when great was notified about it. So in terms of the substantial evidence and the and the clear and convincing evidence, the only evidence in this case, clearly and unequivocally, when the ALJ himself asked Mr. Scott. Would Mr. Wang have been terminated? Absent the recordings, the anonymous complaints, anything like that, he said unequivocally, yes, for the dropping of the trailer was what was so he would have been terminated, and that's the only evidence on that issue. So I know I'm well over time, there are a lot of questions. Does anybody else have any additional questions on that that I clarify before I. Sit down. Thank you, Ms. Boyd. Liz Akinnis. Thank you, judges, may it please the court, my name is Stephanie McInnis and I'm arguing on behalf of the Department of Labor. Your honors, in this case, both the administrative law judge and the administrative review board in a per curiam decision agree that Mr. Hwang proved by a preponderance of the evidence that he engaged in activity that was protected by the whistleblower provision of the Surface Transportation Assistance Act and that this activity was a contributing factor to his termination. The ALJ and board also agree that Great White failed to prove its affirmative defense by clear and convincing evidence that it would have fired Mr. Hwang absent that protected activity. Both are factual issues where the ALJ had to assess the evidence and make credibility determinations. And therefore, on these issues, the court must now determine whether the ALJ and the ARB decisions were supported by substantial evidence in the record. Next, the court must assess whether the ARB was arbitrary and capricious or not in accordance with law and denying Great White's numerous procedural arguments. First, I'm going to start with the contributing factor in affirmative defense arguments that opposing counsel brought up. Judge Harris, I heard some confusion in some of the questioning, and I agree with where that's coming from, because I think there's some confusion around what is the contributing factor analysis and what is related to the affirmative defense of there being this alternate, legitimate, nondiscriminatory reason. Do you agree that this, as you call it, an alternate affirmative defense? Do you agree that if there was another reason that was not related to protective activity, if they could show that that alone was enough to justify the adverse action, that that would be sufficient? Correct. So you can see if I'm not saying you can see that it's enough, but you do can see that they have that affirmative defense, that that would be enough to that they would prevail, correct? Yes, correct, Your Honor. Well, let's get to then, if you would, if you don't mind, since we sort of peeled the onion to that point. Can you respond to the factual question that is as a substantial evidence? As I understand it, they say that the only issue was, did he drop the trailer in Manhattan on a street? That's the only issue. Whether or not the reason for him not being able to get in the tunnel had nothing to do with it, I'll frame it. Tell us why there was substantial evidence against that factual proposition that that was the rule of the company and that he admits that he violated. Well, Your Honor, as an initial matter, I would just like to point out that at the trial level, they would have the burden to show by clear and convincing evidence as part of their affirmative defense. But it can be shown through your testimony of the employee, too. If he admits to the activity, you don't have to have anything external to his admission. Sure, if Great White had proven by clear and convincing evidence. I want you to address that. Is it true that he admitted that he dropped the trailer in New York, in Manhattan, on the street? The decision is unclear on whether or not he dropped the trailer. And the decision is, don't we have a record of what he said? But what did he say? Did he? I must be speaking another language. Did he admit that he dropped the trailer in Manhattan on the street? My understanding is that Great White argues that he did. Okay. So he didn't, right? So he did admit to dropping trailers previously. But not that day. That's my understanding of the record. Yes. Why? Did they find the trailer on the street? I don't believe. Maybe I misread the record. My understanding of the record is that Great White argued that Mr. Wang under in different places admitted to it. But the ALJ ultimately concluded that whether or not he was allowed to drop the trailer was unclear. Whether or not it happened was unclear. Whether or not it was against policy,  to use the restroom, all of that was factually unclear. Counsel, I thought actually trying to go back and find it, and I can't. But I thought that the board basically said whether he dropped it or not, what they haven't been able to show is that they would have fired him for dropping it under these circumstances. Like even right. I thought it was it's not enough to show that they could have fired him for this. They have to show, am I right, that they would have fired him for this. And I thought that's what the board said, that that's the part where they hadn't shown that what you just said about lunch breaks, like it wasn't obvious that when people drop a trailer just for a little bit, they actually do get fired, that they would have fired him for that. That's that's correct, Your Honor. So that was part of the decision. Both decisions was that both. What Great White's policy was regarding drop trailers was unclear whether or not Mr. Wang had been shared, they had shared that policy with him was unclear. It's also unclear what, if any, punishment would happen. And there's some evidence in the record that references truck stops and those types of things. The concern here, right, is that you can have an employer with a handbook that says you can't do anything and they never enforce it. Everybody understands that. And then when the whistleblower shows up, they're like, hang on. We found something you did wrong. We've never enforced it before. But now we're going to fire you. I think that's why the board is focused on this question, not of not so much exactly what did he do, but can the company prove by clearing, convincing evidence that people who do that, whatever their handbook may say, actually get fired. And I thought that was where the board thought you have a major showing. That's correct. They made that point. Yes, that is correct. The only thing that I brought up in addition was that the policy itself was unclear, so both whether or not he could do it and then whether or not he would be fired are two distinct points and they help both issues. Counsel, it may not matter in this case if we agree that prejudice hasn't been shown. But the delays in this case are staggering. I mean, and even though one argued, they clearly implicated interest. And I mean, what's the agency's position given the mandatory timeline as to how this could possibly take the amount of time that it took? Your Honor, I don't have. Any personal knowledge of of why it took so long, I don't believe that information is in the record, so I unfortunately can't answer that question, but I know typically it is usually involving not having not having enough staff, but, you know, we have no. Evidence in this case why that was the case, I will say, you know, we do have the translate enterprise case where this court held that when you have particularly factually intensive cases, it's reasonable for a fact finder to take longer, I do understand three and a half years is an exception. It's not just there. It's the it's the time to get to a hearing is the time after the hearing. At every step of the way, mandatory obligations are not just complied with, but are not anywhere in the universe of compliance. And I just it may not matter here. I mean, I think the prejudice argument, you know, there's some real challenges to that argument. But I just find it remarkable that the statutory mandatory obligations are, you know, not complied with in the degree here. I understand that point, Your Honor. And it seems like it would have a direct effect on the interest, you know, part of the award. But I understand that, Your Honor. I would like to point out again that the translate case does explain that generally these types of time deadlines are directory, they're not mandatory, they're not jurisdictional. But, you know, that doesn't take away from the fact that it did take an extraordinarily long time to come to their decision. Can I ask you, does the agency have a view that anything you can share on, like, what are we going to do in a case? Let's assume for a minute, hypothetically, there's a case where it's an individual employee and the agency does, after 20 years, find in his favor and the defendant can show prejudice. Like this took way too long and it really did prejudice our ability to put on a case. Then what are we supposed to do? What are our choices? Either the defendant has been, you know, badly prejudiced and treated very unfairly, or we take away the relief from an employee who deserved it. Because I feel like we are headed for a very, very difficult set of questions. I think, Your Honor, that at the point in which there is prejudice, OSHA has taken too long. But I think how will we remedy that in a case where it's not OSHA itself bringing an action, but it's an individual employee who's now going to bear the, I guess, we'll take away the award. And so because OSHA took so long, the employee is going to suffer. I mean, how are we going to, I share Judge Quattlebaum's concern that, you know, we may not have to face these difficult questions in this case, but with delays like this, we can't anticipate what will end up being an extremely difficult set of issues. I understand that, Your Honor. I imagine that that's, you know, part of the reason why there is that kick out provision. I understand that employers can't use that provision. But at some point there could be, you know, some quasi due process issue. And if that's brought up, you could look at remedies from there, you know, OSHA doesn't have a, the secretary doesn't have a position on this. But but I imagine, you know, once once that happens, their position is to do better. Yes, correct.  Thank you. Thank you. Is this Sadie? Your Honor, that is correct, Christopher Sadie. And thank you for your time. I appreciate it. I will be happy to answer questions. So just a few things, we kind of ended on the prejudice. And, you know, again, I don't think there really, truly exists a fact pattern for any prejudice on behalf of Great White. Because nothing stopped them from completing an internal investigation back in 2012 when they received this complaint. Why didn't the interest award prejudice? You know, Your Honor, from that perspective, I kind of defer to some of the records and some of the conference calls where even as we approached, it was Great White seeking continuance and they flat out said, we'll not prejudice any of the parties. So because they saw a continuance once. They're not prejudiced by interest that's calculated over the amount of time involved here. I understand and respectfully, Your Honor, is that the interest starts to run from the day of the award. From the award? They do not go retroactive back to when the time was missed. It's probably unfortunate for Mr. Wang and raises the other concern. Right. Yeah, for sure. Yeah. But, you know, again, there is the case that says where a statute does not provide a remedy, it is what it is. And we really want to have a fully staffed government. We don't have a fully staffed office. So, you know, you hope that you take the opportunities for people to get their records and written statements. And in this case, one of the interesting things is they kept pressing Mr. Wang to write stuff. They knew to request him to write stuff, they didn't take the opportunity to write their own notes. Keep in mind, this was a company that had its own in-house general counsel and that in-house general counsel in 2017 stated what the reasons for. And. Give me because it had nothing to do with the drop trailer incident. I will also be happy to address, but it was specific to breaking into the lockbox. Now, wiretapping a phone, which just never happened, it was never found to have a specific quote, breaking in a lockbox, stealing its contents and secretly recording great wide telephone conversations and not due to any other reason. And, you know, that's frightening on a number of levels, because at no point by the time we got to the ALJ hearing, were they still trying to maintain that he wiretapped any phone calls? I think the record was kind of clear that he put a recording device in a bullpen in the middle of an open warehouse on the outside of some computers. So I think the ALJ and the Arabian to correct that. Those were just not it, and the recordings were a part by by admission of great white. The copying of records were a part of the reasons why he was fired. I'll get to some. Questions here, they kind of acknowledged. This is why we fired you. The trailer incident, if I may. And as I go through what I'm about to say, your honors, I just and it's not to put anyone in the position of the ALJs and trying to read, do this fact pattern. But you had double trailer, Maryland, go to Manhattan, go to New Jersey and back to Maryland. That's the actual reality. It's kind of logical. But the great white version is which no evidence supported, which is why the judge never got there, got there, is that the trailer, in order to have been abandoned in Manhattan, he would have had to have gone from Maryland to Manhattan, to New Jersey, back to Manhattan and then back to Maryland. I've lived in New York with the highest Long Island, got out of there as quickly as I could. No one would ever do that. That's not a thing. What the actual conflicting testimony went into and certainly Mr. Wang's version is he did his first stop in Manhattan. And then he went over Price's testimony was crystal clear. Murav, who was signed the route, Price, who reviewed the route. They were all aware that if you send a double trailer to Paramus, the trailer needs to be dropped. So the question you might have is, where was it dropped? And analysis of the transcript shows it was dropped on the parking lot outside of the tunnel. Basically, Paramus Mall. You have to just go through this one little dip. But the parking lot was Nordstrom property. And that's what Mr. Wang was trying to say in spite of all these allegations. And he was actually writing it down way back. And when I never said that, I abandoned the trailer. I parked the trailer on Nordstrom property at in Paramus and then finished the route. And by the way, since he had already been to Manhattan, seeing stories in that trailer was empty. On top of that, he mentioned that he used a flat headlock and on top of that, he parked a converter dolly in front of it, which means that somebody would need a special access pin to have done anything with the trailer that was then parked on Nordstrom property. It's a practice that they had been doing for years. And again, Mr. Wang's unblemished employee record before his complaint 2006 to 2012. No complaints, no nothing. It's you follow this timeline of issues, a complaint and knowledge of the complaint. Start to see people attempt, albeit certainly not supporting a clear and convincing standard. So you support a pretext for his termination. And that's where the judge struggled because he never I should say struggled. So the judge has never found clear and convincing evidence that he should have been terminated or would have been terminated, but for everything. And I think both the ALJ and the ARB. Probably somewhat cavalier in their decisions were saying, look, not only did I not find that these facts happened the way that Great White wants me to believe them heard. I see nothing in these policies that would lead me to believe that the sole remedy would be termination. In fact, we even asked the questions and sometimes you ask questions, you're going to hate the answers. But they were asked without any idea what the answers would be. Has anyone ever been fired for copying a driver's log? Now, has anyone ever been fired for this trailer incident, even if it was proven? No. So we asked the questions. There's just no reason to believe that termination was going to be the remedy that they had. Believe I've hit most of the things, so I just want to go back to the settlement agreement issue. I think the judge was clear. I don't have the equitable powers to determine what, in fact, you believe the settlement to have been. I agree that this wasn't presented to the ALJ as far as the opinion. It wasn't raised in the briefs at the end of the trial. Certainly it wasn't for the ARB and I'm very not understanding as to how it would be proper before this court. But if for some reason it is, I think the Hornbook law is crystal clear that the second you are presenting additional terms, those additional terms are a counteroffer. You have taken away the power of acceptance and purity. We do not want to place courts in a position where they're sitting around going, OK, you guys have 50 some odd terms out there. Here's what I'm going to cop together. That's why we have that nice comfy right line rule. We do something that presents other terms. Great. You have now presented a counteroffer that is available for acceptance and you've revoked the prior ones. Just to clear the records, by the way, I did not say that the confidentiality power should be removed. As in, if we have an agreement, you should remove it. I was heightening the importance of such a term. I was noting that those types of terms are frowned upon, certainly in whistleblower action, certainly in the rubric of wage claims and stuff like that, not that this is one. But that it was a material term, it was an objectionable term. So, yeah, adding terms, you know, we don't just get to cavalry when we throw them out, it's an added term. And then on top of that, at a time that great wide is threatening criminal action. By the way, at no point did anyone look at what theft is in Maryland, but it's defined by criminal article 7104. And it's an intent to purposefully deprive one of their possessions, taking a record, copying it, returning it. Comes nowhere near the threshold of theft or stealing. But that's what Mr. Wang was facing, and one of those additional terms that great wide wanted to sneak in was a one way unilateral release. It's absurd, your honors. But again, that was probably not proper for this court. And it wasn't presented to the ARP. I just think that there is no other, there's nothing in this record to show by clear and convincing evidence that his would have happened, but for his retaliation for him filing this complaint, which he absolutely did. There's also no comparison case because that gentleman never ever made a complaint. So, you know, in fact, one of the funny things in that case is that they went on to say certainly copying records would have been a protected activity. And again, one of the reasons why they terminated him, they absolutely terminated him for a protected activity. The burden shifted to show never reached. Say you're terminated. I thank you all for your time. Unless there's any questions, I will step down. Thank you, Mr. Daly. Ms. Bowen. Thank you, your honors. Just a couple of quick responses to that with respect to whether or not there is a case on on point regarding what the authority is. For dismissal or prejudice, if it's an individual defendant as opposed to the agency, that's in our brief as Roe v. Express first goal. And if what this says is that if the delay, the prejudice or if the delay is prejudicial and there is a consequence specified in the statute that the secretary could lose jurisdiction. So you've got to show prejudice and you've got to show a consequence. And I would argue that a consequence would be the secretary losing the jurisdiction by allowing that employee to file in district court as opposed to move it to district court because of the delay. So we've got we've got the consequence for failing to meet those time those time requirements. And we have the prejudice to great wide. As we have already touched on. With respect to. The. The affidavit of Mr. Scott, again, it had been at that point five and a half years since the termination. That is one of the cases where he did not recall in as great a detail as Mr. Scott. He wasn't one of the ones who was involved in that decision that no other reason is clarified in the next paragraph of the affidavit that says he was not terminated. Mr. Hwang was not terminated for making a safety complaint. Great white encourages those complaints. And the testimony was they rely on their employees to bring that to their attention. That that's that is they can't be everywhere. They rely on their employees. Respect to the drop trailer incident. I completely disagree with the characterization of the testimony or of that the trailer on the Manhattan Street. He I believe his testimony was that he left it there while the other trailer in Manhattan was being unloaded. But he clearly testified he left it there. That is a great wide company policy for a reason and a very important reason that Amy Price testified to during her examination, it's because of the value of the trailers and it's the customer about the fact that they're true, that you've never fired anyone for that as a as a sole sanction for that. That was not the testimony. It was a testimony as to other people. What was the testimony about other persons? Certainly he wasn't the first person to drop a trailer someplace other than where you want him to drop it or her to drop it. So that's why there is not any other who is brought a trailer unsecured off of customer property that has not been fired as a result since they implemented the policy. And there is. We are Mr. Scott was clear, this is grounds for immediate termination, it's grounds for termination in and of itself because of the. Because of the. Value of the trailers, what about the evidence assertion that this actually was Nordstrom's property, that that's not actually that's not wasn't the testimony, the Paramus, New Jersey store where you drop a trailer that is Nordstrom property. So that is OK. The Manhattan store is a different store and it was dropped on a public street in Manhattan rather than one the property. So so that's that's the difference. It's OK to drop a trailer on property on Nordstrom property because Nordstrom has their own security and it is then Nordstrom's responsibility if you drop it off of Nordstrom property. Nordstrom has no authority. It's not on their property. Their security can't do much about it at that point. So there's the difference between the New Jersey store and the Manhattan store with respect to where it was dropped. There were no issues with him dropping it on the parking lot in in New Jersey. That's not an issue because that's Nordstrom property. And just briefly, the issue with whether or not they take meal breaks or whether or not they go get a cup of coffee. That has no bearing on dropping a trailer in that policy, because as was testified to, dropping the trailer means unhooking it and driving it away, meal breaks or coffee stops. You are on that property with the tractor. You are not unhooking the tractor and driving it away. It's it's a completely different issue. You are still hooked up to that tractor. You are on the property with it. You are not leaving that tractor unhooked and unattended. So that's that's the difference with that. And with respect just to the employee handbook, you are not intended to cover every single situation. I was not referring to Great White in particular, but rather to the emphasis that the board has always put on the distinction between could a person be fired for this and would this person have been fired for this? That's all. OK. And the testimony from Mr. Scott was what? And the ALJ actually asked that question. I'm not asking you, would he have been fired? Would he have been fired? Right. But the ALJ thought that testimony didn't hold up in light of all of the record evidence. And so you have to persuade us that the ALJ and the board got that wrong because they're there to make those credibility determinations, to see whether that testimony was reflected in any documentation. And they thought it was not. And so here we are. Right. So it was reflected in the document. You had to know that it was your burden for their permanent defense. And you in this case, it's undisputed that the temporal nexus in this case is against you. Oh, absolutely. So therefore, even more so, would have fired more more evidence you need because it was so close to the detective activity. Right. An individual who reported Kaufman, who reported safety violations at the same time as Mr. Huang still worked there at the time of the hearing. The only difference between those two situations was there was no other action on the part of Mr. Kaufman. He had not dropped a trailer on the street. He reported a safety violation and he was still employed. So he was similarly situated. He's still employed. The difference is Mr. Huang's violation of the policy. Thank you so much. Thank you, counsel. I appreciate your being here and wish you well and be safe. We'll go to our next case.
judges: Roger L. Gregory, Pamela A. Harris, A. Marvin Quattlebaum Jr.